# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| HELEN L. COBBS,<br>　　　　　　*Plaintiff,*<br>v.<br>FIRST TRANSIT COMPANY, *ET AL.*,<br>　　　　　　*Defendants.* | CASE NO. 6:16-CV-00015<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

　　　On April 1, 2016, Helen L. Cobbs ("Plaintiff") filed an amended complaint against First Transit, Inc., Central Virginia Transit Management Co., Inc. ("CVT"), Greater Lynchburg Transit Co. ("GLTC"), Dennis Dorsey, Kevin Lacy, Alan Robey, Gloria Berkley, and Karen Walton alleging hostile work environment sexual harassment ("Count I"), *quid pro quo* discrimination ("Count II"), and retaliation ("Count III") by all defendants—as well as intentional infliction of emotional distress ("Count IV") and assault ("Count V") by Dorsey. (Dkt. 5). Lacy, Robey, Berkley, and Walton were dismissed from the suit on the ground that supervisors are not liable in their individual capacities for Title VII violations, (dkt. 21), leaving First Transit, CVT, GLTC, and Dorsey ("Defendants") as parties to the suit.

　　　This matter is before the Court on Defendants' motions to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), for lack of jurisdiction and/or failure to state a claim. (Dkts. 15, 18, 31). The motions by First Transit, CVT, and GLTC will be denied because Plaintiff has adequately pled Title VII violations, while Dorsey's motion will be granted, and the claims against him will be dismissed because he cannot be sued under Title VII, the assault claim is time barred, and the intentional infliction of emotion distress claim lacks sufficient allegations.

### I. LEGAL STANDARD

　　　A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a

complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## II. FACTS AS ALLEGED

On or about November 28, 2011, Helen Cobbs was hired by CVT or GLTC as a bus operator. (Dkt 5 ¶ 13). In December 2013, Cobbs was injured in a work-related accident and restricted to light duty employment. (*Id*. ¶¶ 14–15). During this light duty employment, Dennis Dorsey, who was employed by either First Transit or CVT, was her supervisor. (*Id*. ¶¶ 8, 16).

Over the next few months, Dorsey began commenting on Cobbs appearance, sending her cards, sending her text messages, and making other unwelcome advances. (*Id*. ¶¶ 18–25).

2

Cobbs told Dorsey that these unwelcome advances and comments were "putting her in a bad position" as she was often secluded in his office alone with him. (*Id.* ¶ 26). Dorsey would also require Cobbs to accompany him when he left the office to run errands. (*Id.* ¶ 28). During one these trips, Dorsey placed his hand on her knee and smiled. (*Id.* ¶¶ 29–30). Again, Cobbs continued to plead with Dorsey to stop these advances, but to no avail. (*Id.* ¶¶ 33–34).

Dorsey told Cobbs "she could 'have it anyway [*sic*] she wanted,' and threatened that he could 'fix it where there wouldn't be any light duty work available for her' and she could just 'stay home and get partial pay.'" (*Id.* ¶ 32). The unwanted sexual advances continued, and when Cobbs would not respond, Dorsey told her there was no more light duty work and she had to take time off. (*Id.* ¶¶ 37–38). However, the text messages from Dorsey continued, in which he asked her to "come on over" and "ride to MD" with him. (*Id.* ¶¶ 39–41).

Cobbs returned to work with the assignment of answering phone calls. (*Id.* ¶ 42). The advances and text messages continued. (*Id.* ¶¶ 43–56). Once again, Cobbs told Dorsey she was uncomfortable with his communication and requested that she be assigned to work elsewhere within the company. (*Id.* ¶ 56.) After this meeting, Cobbs spoke with union steward, Chuck Hudson, about the unwanted advances from Dorsey. (*Id.* ¶ 58). She also reported the incident to Karen Walton, the general manager, and Gloria Berkley, who works in human resources at First Transit or CVT. (*Id.* ¶¶ 11–12, 59–64).

On or about May 2, 2014, Cobbs met with Walton and showed her some of the text messages. (*Id.* ¶ 60). Walton stated that the text messages were not "that bad." (*Id.* ¶ 61). Berkley also failed to correct the problem, stating that she had no control over who likes whom. (*Id.* ¶ 62). After the meetings with Walton and Berkley, Cobbs submitted a written complaint to Berkley. (*Id.* ¶ 63). On or about May 5, 2014, Berkley informed Cobbs that she would conduct an investigation. (*Id.* ¶ 65). When Cobbs returned to her mailbox, she had received a letter that

3

she, along with other employees, was being placed on furlough starting May 10, 2014. (*Id.* ¶ 66).

After a few weeks on furlough, Gloria Berkley called Thomas Coles to inform him that a position had opened up, but he declined. (*Id.* ¶ 67). According to company policy, Cobbs should have been the next person contacted about the open position, considering her seniority, but she was not called. (*Id.* ¶ 68). In August 2014, Cobbs finally returned from furlough. (*Id.* ¶ 69).

At the orientation for her return, Kevin Lacy, who was employed by First Transit or CVT, stated that the company was not going to deal with "some of the mess that people were saying before the furlough." (*Id.* ¶¶ 9, 70). Cobbs began to recognize that her co-workers would make negative comments when she passed and she was constantly disciplined and given written disciplinary letters. (*Id.* ¶¶ 71–78).

On or about September 30, 2014, Cobbs filed a Greivance Form, in which she requested a hearing related to a disciplinary letter she had received and alleged that she was being targeted by Dorsey. (*Id.* ¶ 81). Cobbs then filed an EEOC Discrimination charge against CVT. (*Id.* ¶ 83). On or about December 31, 2015, Cobbs received a Notice of Right to sue from the EEOC. (*Id.* ¶ 89).

Cobbs sought mental health treatment due to these events beginning in October 2014. (*Id.* ¶ 82). Dr. George W. Luedke, a psychiatrist, diagnosed Cobbs with single incident major depression and felt that she could not return to work. (*Id.* ¶ 87). Dr. Luedke believed that Cobbs would be incapacitated through February 30, 2017. (*Id.* ¶ 92). Another doctor, Dr. Matthew Tatom, has also treated Cobbs and diagnosed her with PTSD, anxiety, and depression. (*Id.* ¶ 85).

### III. ANALYSIS OF CLAIMS AGAINST FIRST TRANSIT, GLTC, AND CVT

*A. Exhaustion of Administrative Remedies*

First Transit and GLTC argue that they should be dismissed because Cobbs failed to name these entities in her EEOC complaint. (Dkt. 15-1 at 4; dkt. 19 at 18–19). Specifically,

4

Cobbs only named CVT in her EEOC complaint. (Dkt. 5-2 at ECF pp.19–20, 22).

Under 42 U.S.C. § 2000e-5(f)(1), when the EEOC has concluded its process, it "shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against *the respondent named in the charge . . . .*" (emphasis added). "[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the Federal Courts of subject matter jurisdiction over the claim." *Jones v. Calvert Group Ltd.*, 551 F.3d 297, 300 (4th Cir. 2008). However, "[c]ourts have developed exceptions to this rule . . . where it is clear that the defendant through some relationship with the named respondent had notice of the charges and participated in the conciliation process." *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1186 n.5 (4th Cir. 1981); *see also Chastang v. Flynn & Emirch Co.*, 365 F. Supp. 957, 964 (D. Md. 1973) ("[W]here there is a substantial, if not complete identity of parties before the EEOC and the court, it would require an unnecessarily technical and restrictive reading of" the statute to deny jurisdiction.), *aff'd in relevant part*, 541 F.2d 1040 (4th Cir. 1976). When determining whether there is a substantial identity between the two parties, court consider the following factors:

> (1) whether the role of the unnamed party could, through reasonable effort by the complainant, be ascertained at the time of the filing of the EEOC complaint; (2) whether under the circumstances, the interests of the named party are so similar to the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether the unnamed party's absence from the EEOC proceedings resulted in actual prejudice to the interest of the unnamed party; and (4) whether the unnamed party has in some way represented to the complainant that his relationship with the complainant is to be through the named party.

*Ross v. Franklin County Department of Social Services, et al.*, No. 7:14-cv-512, 2016 WL 2757449, at *3 (W.D. Va. May 11, 2016).

Considering these factors, First Transit and GLTC share a substantial identity with CVT and will not be dismissed due to Cobb's failure to include them in the EEOC complaint. First,

the role of each unnamed party could not be ascertained at the time of the filing. To date, Cobbs is unsure about which company employed her and each of her supervisors. At this stage of litigation, without proper discovery, Cobbs cannot be expected to understand the detailed factual background of a corporate structure that has numerous subsidiaries or holding companies. *See, e.g.*, *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424 (E.D. Pa. 2007) ("Where courts have addressed the liability of a parent corporation in the context of employment discrimination, most have declined to dismiss the corporate parent at the Rule 12(b)(6) stage. This is so because the requisite inquiry is fact-driven, and prior to discovery there is insufficient evidence in the record to determine whether the parent company" is liable.").

Second, First Transit and GLTC had the opportunity to obtain voluntary conciliation and compliance during the EEOC proceeding. For example, GLTC and First Transit are represented in this litigation by the same attorney as CVT, the party named in the EEOC compliant. With the same counsel at this stage of litigation, GLTC and First Transit had constructive notice and the ability to secure voluntary compliance during the EEOC proceedings. First Transit and GLTC have failed to demonstrate how their interests would be sufficiently different to warrant them being named separately in the EEOC complaint.

Third, First Transit and GLTC's absence from EEOC proceedings did not result in actual prejudice to their interests. As mentioned above, the Amended Complaint sufficiently alleges that First Transit, GLTC, and CVT are operated through common management and control. Considering the closeness of these three entities, it would seem that the interests of First Transit, GLTC, and CVT are sufficiently aligned; therefore, First Transit and GLTC's absence from the previous proceedings would not prejudice them. Furthermore, First Transit and GLTC have failed to demonstrate with specificity how they would be plausibly prejudiced in the current case by their absence from the earlier EEOC proceedings.

6

While Plaintiff's complaint does not allege that First Transit or GLTC represented to Cobbs that she should direct her relationship of those companies through CVT, it can be determined at this stage of litigation that Cobbs felt that all three companies were acting together through this common scheme of management and control. Furthermore, Cobbs was unsure of the exact corporate entity that employed her and named CVT in her EEOC complaint. (Dkt. 5 ¶ 13).

Accordingly, First Transit and GLTC will not be dismissed for Plaintiff's failure to include them in the EEOC complaint as the alleged complaint in this case establishes substantial identity between the parties.

### B. Quid Pro Quo Sexual Harassment

CVT and GLTC argue that Count II of Plaintiff's Amendment Complaint should be dismissed because she has failed to plead facts sufficient to establish a plausible claim of *quid pro quo* sexual harassment. More specifically, CVT and GLTC argue that Plainiff has failed to plead that her rejection of Dorsey's sexual advances resulted in a "'tangible employment action,' such as discharge, demotion, or undesirable reassignment." *Reinhold v. Virginia*, 151 F.3d 172, 174 (4th Cir. 1998); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753–54 (1998) ("When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII.").

Plaintiff contends that she has sufficiently pled *quid pro quo* sexual harassment in her Amended Complaint because a tangible employment action was taken against her when she continued to resist Dorsey's sexual advances. Plaintiff alleges that Dorsey said she could "have it anyway [*sic*] she wanted" and would "fix it where there wouldn't be any light duty work

7

available to her," which would force her to "stay home and get partial pay."[1] (Dkt. 5 ¶ 32) Dorsey then asked if Plaintiff had "given any thought to what she's going to do." (*Id.* ¶ 37). Finally, after a few days of no response, Dorsey informed Plaintiff that there was no more light duty work available, and she would have to take time off of work. (*Id.* ¶ 38). As a result, Plaintiff alleges she suffered "substantial loss of income" by being unable to work. (*Id.* ¶ 104). Because "all allegations in the complaint [are] taken as true and all reasonable inferences [are] drawn in the plaintiff's favor," *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005), the Court can infer that Plaintiff's removal from light duty work was due to her rejection of Dorsey's sexual advances.

Thus, the key question is whether the loss of light duty work—which in turn required Plaintiff to take time off and receive workers' compensation in lieu of regular pay—constitutes a "tangible employment action." The parties failed to identify, and the Court is unaware of, any cases, in the Fourth Circuit or elsewhere, that have addressed this precise question. Based on current case law, however, the Court finds that denying Plaintiff light work constituted a tangible employment action because it significantly reduced her income.

The Supreme Court defines a "tangible employment action" as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 at 761. "A tangible employment action in most cases inflicts direct economic harm." *Id.* at 762. The Fourth Circuit has stated that being "discharged, demoted, or reassigned" would all potentially qualify as tangible employment actions. *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 267 (4th Cir. 2001).

---

[1] Plaintiff was on light duty to begin with because she had been injured and restricted to light duty work. (Dkt. 5 ¶¶ 14–15). By "partial pay," Dorsey was presumably referring to receiving workers' compensation rather than full wages.

8

According to Plaintiff's Amended Complaint, Dorsey informed Plaintiff that light duty work was no longer available, which would require her to seek workers' compensation. When an employee is partially incapacitated, an employer may, but is not required to, offer light duty work in lieu of receiving workers' compensation. *See* Va. Code § 65.2-510; *Big D Quality Homebuilders v. Hamilton*, 228 Va. 378, 381 (1984). If an employer either cannot or chooses not to provide light work duty, the injured employee may receive two-thirds of their average weekly wage, provided that they continue to seek alternative employment. *See* Va. Code § 65.2-502; *Ford Motor Co. v. Favinger*, 275 Va. 83, 89 (2008).

The practical import of this is that after declining Dorsey's advances Plaintiff went from working her regular schedule and receiving full pay to receiving two-thirds of her pay, as long as she demonstrated that she was seeking alternative employment. While it is true that Plaintiff's employer did not have a duty to offer her limited duty work, that is not relevant here. Although Plaintiff was not entitled to light duty work *ex ante*, she had already been assigned light work duty, and being removed from it harmed her. The important fact is that when Plaintiff denied Dorsey's sexual advances, she was reduced from full pay to two-thirds pay. This would appear to be a "significant change in benefits" with a "direct economic impact" contemplated by the Supreme Court, *Ellerth*, 524 U.S. at 761–62, or perhaps akin to being "demoted" as described by the Fourth Circuit, *Matvia*, 259 F.3d at 267, and thus a tangible employment action.

Accordingly, because Plaintiff has sufficiently pled that a tangible employment action was taken against her, she has established a plausible claim of *quid pro quo* sexual harassment, and the claim will not be dismissed at this stage.

C. *Hostile Work Environment*

CVT and GLTC argue that Count III should be dismissed because the allegations fail to establish a claim of a hostile work environment. The essence of Defendants' argument is that

9

Dorsey's alleged actions amount to nothing more than permissible, albeit persistent, attempts at initiating a romantic relationship with Plaintiff. (Dkt. 19 at 15). Because "all reasonable inferences [are] drawn in the plaintiff's favor," *Chao*, 415 F.3d at 346, the Court finds that Plaintiff's factual allegations are sufficient to establish a hostile work environment claim.

A successful hostile work environment claim requires four elements: "(1) unwelcome conduct; (2) that is based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 458 (4th Cir. 2002). Defendants do not contest the first, second, or fourth elements; rather, they argue that Dorsey's conduct was not sufficiently severe or pervasive. (Dkt. 19 at 15).

"To be actionable, the conduct must create an objectively hostile or abusive work environment, and the victim must also perceive the environment to be abusive." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001). "The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances," *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, (1998), including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Anderson*, 281 F.3d at 459. No single factor is determinative, and the Fourth Circuit has made clear that Title VII is "designed to protect working women from the kind of male attentions that can make the workplace hellish for women . . . [not] to purge the workplace of vulgarity." *Id.*

Considering the factual allegations in the Complaint, the Court finds that Plaintiff has established a plausible claim of a hostile work environment. Plaintiff alleges a seemingly constant stream of romantic pleas from Dorsey. She alleges numerous after-hours text messages,

10

(dkt. 1 ¶¶ 20–21, 39, 40–41, 43–44, 49–54), a personalized and arguably suggestive Christmas card, (*id.* ¶ 19), physical contact, (*id.* ¶¶ 25, 30), threats if she declined Dorsey's advances, (*id.* ¶ 32), repeated pleas from Plaintiff for the conduct to stop, (*id.* ¶¶ 33, 56), and inappropriate comments at work, (*id.* ¶¶ 18, 24). Dorsey even required Plaintiff to drive him to and from the airport outside working hours and without compensation, presumably under the threat of having light duty work withdrawn again. (*Id.* ¶ 45). Dorsey also sent text messages Plaintiff's daughter, asking her to relay messages to Plaintiff. (*Id.* ¶ 55).

Defendants, in their brief, argue that even taking the factual allegations as true, Dorsey's actions were not pervasive enough to create an objectively hostile work environment. (Dkt. 19 at 15). They argue that Dorsey simply wanted to start a romantic relationship with Plaintiff. (*Id.* at 15–16). While it is true that some amount of romantic interest can be anticipated when individuals are working in close quarters, (Dkt. 5 ¶¶ 23, 26), the Complaint alleges a course of conduct by Dorsey that amounted to repeated and persistent romantic advances, threats of adverse consequences for declining his advances, as well as tangible employment actions when Plaintiff continued to deny Dorsey's advances. While the Complaint only alleges two instances of physical contact, (*id.* ¶¶ 25, 30), repeated physical contact is not an essential condition of a hostile work environment claim. *See E.E.O.C. v. R&R Ventures*, 244 F.3d 334, 340 (4th Cir. 2001) (finding that allegation of unwanted touching are not required to sustain a hostile work environment claim).

Taking the allegations as true, the Court finds that a reasonable person would find that the persistent and pervasive sexual advances by Dorsey, taken as a whole, establish a cognizable claim of hostile work environment. A deeper dive into the validity and severity of these allegations is better suited for summary judgment or the jury. Thus, Plaintiff's hostile work environment claim will not be dismissed at this time.

## D. Retaliation

Plaintiff's third and final Title VII claim is retaliation by Defendants after she reported Dorsey's actions to administrators. (Dkt. 5 ¶¶ 108–13). The Supreme Court has held that a plaintiff must show "retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). More specifically, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68 (internal quotation marks and citations omitted). Defendants argue that even taking Plaintiff's allegations as true, she has not pled retaliation that was objectively materially adverse. (Dkt. 19 at 16–18).

Plaintiff alleges a series of retaliatory actions that were taken against her after she reported Dorsey's conduct to the general manager, Karen Walton, and a representative in human resources, Gloria Berkley, on or about May 2, 2014. (Dkt. 5 ¶¶ 59–63). These include questioning her daughter about the sexual assault complaint, (*id.* ¶ 64), violating company policy by not calling her back from furlough, (*id.* ¶ 67–68), commenting about "the mess that people were saying before the furlough" after Plaintiff returned (*id.* ¶ 70), treating Plaintiff harshly upon return her from furlough, (*id.* ¶ 71–73), and issuing a disciplinary letter based on a "missout" (*i.e.*, an unexcused absence) and a customer complaint, (*id.* ¶ 78, Ex. 8).

Even taking the allegations as true and drawing reasonable inferences in Plaintiff's favor, *Chao*, 415 F.3d at 346, many of these actions are clearly not retaliatory, because they are not "materially adverse." *Burlington N.*, 548 U.S. at 68. For instance, interviewing Plaintiff's daughter about Plaintiff's sexual harassment complaint was likely a required aspect of the harassment internal investigation. Likewise, the comments made upon Plaintiff's return from furlough and the allegations of harsh treatment, absent additional facts, do not appear to be

12

invidious or even particularized to Plaintiff. Finally, the disciplinary letter, on its face, appears to be substantiated by facts, rather than a targeted attack.

Nevertheless, as Defendants appear to concede, the allegation that Defendants failed to call Plaintiff back from furlough to fill the open position, if accurate, would amount to materially adverse retaliation. According to the Complaint, Plaintiff and others were placed on furlough starting May 10, 2014. (Dkt. 5 ¶ 66). After a week or two on furlough, Gloria Berkley called Thomas Coles to inform him that a position had opened up, but he declined. (*Id.* ¶ 67). According to company policy, Plaintiff should have been the next person contacted about the open position, considering her seniority, but she was not called. (*Id.* ¶ 68). Consequently, Plaintiff was not called back from furlough until early August. (*Id.* ¶ 69).

As the Defendants themselves state, "[p]erhaps the allegation about the call back is sufficient to be a material action, based on the preferences given plaintiff at this [12(b)(6)] stage." (Dkt. 29 at 5). Defendants argue that this is "scant evidence of retaliation," (*id.*), but Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff's allegations, if true, would demonstrate that she remained on furlough over two months more than necessary, as a way of punishing her for reporting Dorsey. This financial disincentive is a materially adverse action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68 (internal quotation marks and citations omitted). Accordingly, Plaintiff's retaliation claim is plausible and will not be dismissed at this stage of the litigation.

### IV. ANALYSIS OF CLAIMS AGAINST DORSEY
#### A. Title VII Claims

Dorsey's Motion to Dismiss asks the Court to dismiss the Title VII claims against him, *i.e.*, hostile work environment sexual harassment ("Count I"), *quid pro quo* sexual harassment

13

("Count II"), and retaliation ("Count III"). (Dkt. 31-1 at 6). Because "[e]mployees are not liable in their individual capacities for Title VII violations," *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 178 (4th Cir. 1998), and Plaintiff concedes this point, (dkt. 33 at 7), Counts I, II, and III against Dorsey will be dismissed.

### B. Intentional Infliction of Emotional Distress

Dorsey argues that Plaintiff failed to bring her intentional infliction of emotional distress ("IIED") claim within the statute of limitations, or alternatively, she failed to plead facts sufficient to create a plausible case of IIED. (Dkt. 31-1 at 6). The Court finds that, looking only to actions that took place within the statute of limitations, Plaintiff has failed to assert a cognizable claim of IIED. Consequently, the IIED claim will be dismissed.

*1. Statute of Limitations*

The statute of limitations for claims of IIED is two years. Va. Code § 8.01-243 ("[E]very action for personal injuries, whatever the theory of recovery, . . . shall be brought within two years after the cause of action accrues."). Dorsey asserts that the latest actions alleged to constitute IIED occurred on or around March 12, 2014, but the Complaint was filed on April 1, 2016. (Dkt. 31-1 at 6). Plaintiff concedes that many of the actions in the Complaint took place prior to April 1, 2014 (*i.e.*, outside the statute of limitations), but she argues that the post-April 1st allegations are sufficient to establish a claim of IIED. Most notably, Plaintiff alleges that Dorsey "rode the route [she] was assigned as a form of intimidation" after April 1st. (Dkt. 33 at 3). Beyond that, however, there are no allegations in the Complaint that occurred within the statute of limitations that could be construed as supporting an IIED claim against Dorsey. Plaintiff, in her brief, references Dorsey's text messages, physical touching, sexual comments, threats, and other actions, (dkt. 33 at 5–6), but all these actions occurred unequivocally before April 1, 2014. (Dkt. 5 ¶¶ 16–52 (outlining the course of conduct by Dorsey, all of which took

14

place before April 1, 2014)). As such, Plaintiff's IIED claim is not time barred, but it must stand solely on the scant allegations of conduct by Dorsey after April 1, 2014.

*2. Insufficient Facts*

In order to state a claim for IIED, a litigant must plead: (1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) there was a causal connection between the defendant's conduct and the resulting emotional distress; and (4) the resulting emotional distress was severe. *Almy v. Grisham*, 273 Va. 68, 77 (2007). Even after treating all the allegations in the Complaint as true and resolving reasonable inferences in Plaintiff's favor, she has failed to establish a plausible claim of IIED.

The Court begins its analysis from the baseline that "IIED claims are disfavored in Virginia," *Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619, 632 (W.D. Va. 2015), and the alleged conduct must be considered "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Almy v. Grisham*, 273 Va. 68, 78 (2007). Here, the only conduct by Dorsey that occurred within the statute of limitations was riding Plaintiff's route as a means of intimidation. (Dkt. 33 at 3). This conduct is far from being what a reasonable person would call outrageous or intolerable. Even drawing all inferences in Plaintiff's favor, she has failed to satisfy the elements of IIED, and her claim will be dismissed.

## C. Assault

Dorsey's Motion to Dismiss argues that Plaintiff's assault claim ("Count V") should be dismissed because she failed to file her claim within the two-year statute of limitations. (Dkt. 31-1 at 9). Plaintiff concedes this point. (Dkt. 33 at 7). As Dorsey is the only defendant named in the assault charge, Count V will be dismissed from the case in its entirety.

15

## V. Conclusion

Based on the foregoing, CVT and GLTC's Motion to Dismiss, (dkt. 18), as well as First Transit's Motion to Dismiss, (dkt 15), will be denied. Plaintiff has properly exhausted her administrative remedies and pled facts sufficient to establish *quid pro quo* sexual harassment, hostile work environment, and retaliation claims under Title VII. Dorsey's Motion to Dismiss, (dkt. 31), will be granted, the claims against him will be dismissed, and he will be terminated from the case. Dorsey is not personally liable is for any Title VII violations, the assault claim is barred by the statute of limitations, and Plaintiff has failed to state a plausible claim for IIED.

An appropriate Order will issue, and the Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to Plaintiff, Defendants, and all counsel of record.

Entered this __16th__ day of December, 2016.

*/s/ Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE